## EZRA CAREY

### *v.*

## FRANKLIN HENDERSON *et al.* for use, etc.

1. EVIDENCE—*as between co-defendants.* In a suit in the names of two for the use of one of them, in which the one not having interest testified against his co-plaintiff, it is competent to contradict or impeach him by other witnesses.

2. SAME—*when contradictory.* When evidence is contradictory, involving the credibility of witnesses, the question is one peculiary for the jury, and their verdict should not be disturbed.

3. SAME—*legal presumption.* Whether a witness swears mistakenly, or knowingly falsely, is a question of fact for the jury, and not one of law.

APPEAL from the Circuit Court of Livingston county; the Hon. CHARLES H. WOOD, Judge, presiding.

Mr. THOMAS L. TIPTON and Mr. L. E. PAYSON, for the appellant.

Messrs. PILLSBURY & LAWRENCE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

One of the errors assigned on the record in this case is, that the verdict of the jury was manifestly against the evidence.

The case, in brief, is as follows:   In June, 1866, Henderson & Lane, the appellees, purchased of the Carey Brothers, John, Samuel and William, sons of Ezra Carey, the appellant, a lot of hogs, amounting to about $400, and shortly afterward a lot of cattle, amounting to about $200.   The Carey Brothers sued appellees, in the McLean circuit court, and on January 27th, 1868, recovered a judgment against them for $458.76, Lane having paid enough on the stock out of his store to reduce the indebtedness of appellees for the stock so purchased to that amount.   Execution issued on the judgment and was paid by Henderson August 8th, 1869, who, after such payment, brought this suit in the name of Henderson & Lane, for his use, against Ezra Carey, the father, claiming that Lane had paid the money for the stock to Ezra Carey, and that the latter loaned the money back to Lane, individually.

According to the testimony of Henderson, he, with Lane, went to Ezra Carey's for the purpose of buying some fat hogs, who referred him to the boys in the field; that he went with Lane and made the purchase of them, telling them he was going to Chicago with the hogs that night, and would pay them for the hogs on his return, which would not exceed three days; that after this they bought the cattle; that he paid to Lane all the money for the hogs and cattle due to the Careys, to pay over to them; that on the 2d day of December, 1866, he had an interview and conversation with Ezra Carey on the subject, when Carey, after stating that Lane was indebted to him about $600, said, "I will tell you just how it was; the money was for the stock that you and he bought, but Lane came to me with the money and settled up for the stock, counted the money out to me on his knee, and offered it to me in his hand, and at the same time asked me for the loan of it, and I let him have it, and felt just as safe as though I had put it in the bank."

George Falkingham testifies to the same admission substantially, on the part of Ezra Carey, in a conversation he had with him about January 12, 1867.

380     CAREY v. HENDERSON *et al.*, ETC.     [Sept. T.,

Opinion of the Court.

The witness Frankenburg testifies in regard to the same conversation, that Carey was telling Falkingham that Lane was owing him for stock, and that it was good luck that it was not more, as he could have got more money if he had asked for it.

It is first objected that the facts, as testified to by Henderson and Falkingham, would not authorize a recovery against appellant. But they were sufficient to justify the conclusion that the money due for the stock was paid over by Henderson & Lane to Ezra Carey, and received by the latter, and immediately loaned to Lane; and if Ezra Carey had no authority to receive the money for the Carey Brothers, then he would be liable to Henderson & Lane, as for money had and received to their use.

The testimony of Ezra Carey was in full denial of that of Henderson and Falkingham.

It was a case, then, of the unsworn statements of the defendant against his sworn statement, and the jury saw fit to give credence to the former over the latter.

There was much testimony corroborative of that of Henderson and Falkingham to this extent, that Ezra Carey was claiming an indebtedness of about this amount to be due from Lane to him, and expressed much concern lest he should lose it, on account of. Lane's failure in business, which took place about the 25th of December, 1866; and Henderson seems to have had no intimation that he was looked upon as liable until about the 20th of January, 1867, although almost daily meeting with the Careys, or some of them.

The testimony of Lane coincided with that of the defendant, that no such payment as that claimed by Henderson was ever made or offered. But the credit of Lane is impeached by the testimony of Reuben and Jesse T. Williams, who both testify to an admission of Lane, in the summer of 1868, that Henderson paid the money for the stock bought of the Carey brothers, to him, Lane, and that he, Lane, took it to Ezra Carey and settled with him for the stock, and paid him, and then borrowed it back of him for himself.

It was further in testimony, that there was a state of ill-feeling between Lane and Henderson, growing out of a claim of $50 of the former against the latter, which was in suit between them.

And here a point is made, that the court erred in admitting the testimony of Reuben and Jesse Williams to impeach that of Lane, because the latter was a co-partner and a co-plaintiff with Henderson in the suit. No authority is cited in support of the position, and we are aware of no principle to sustain it. The suit is brought in the name of Henderson & Lane, for the use of Henderson—the latter is the real party to the action. When Lane is admitted on behalf of the defendant, to give testimony adverse to the claim sued on, no reason is perceived why Henderson should not be permitted to introduce the contrary statements of the former in discredit of his testimony.

There was much contradictory testimony in the case; the credibility of witnesses was largely involved; the question was one peculiarly for a jury, and they have passed upon it. We can not say that their verdict is so manifestly against the evidence that it should be disturbed.

We do not perceive any error in the modification of defendant's eighth instruction, which is assigned as error.

The modification consisted in striking out the following concluding words of the instruction: "then the jury shall so reconcile them, for the law will presume mistake or misunderstanding before positive perjury."

There is no presumption of law on the subject. Whether a witness swears mistakenly, or knowingly falsely, is a question of fact for the jury, and not one of law.

It is also assigned as error, that the damages are excessive to the extent of $3.27, arising from allowing as damages the amount paid by Henderson to satisfy the judgment against Henderson & Lane, on the 8th day of August, 1868, with interest from that time, instead of the amount of the judgment with interest from the time of its rendition, January 27, 1868.

But the judgment recovered is only for $543.23, and so long as it is less than the amount of the money of Henderson & Lane, received by the defendant, to wit, $600, and is no more than the sum actually paid by Henderson.in order to discharge the indebtedness of Henderson & Lane to the Carey brothers, and interest thereon, we do not see that the defendant has any just ground of complaint that the damages are excessive.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT dissenting.